# DISPUTE PREVENTION & RESOLUTION, INC.

# DEMAND FOR ARBITRATION©

# This Demand is Made Upon: Name(s) of the Party(s)

Respondent: Dick Pacific / Ghemm JV
Address: PO Box 35490
 Ft. Wainwright, Alaska 99703
Phone: 907-356-3174    Fax 907-356-3176

Attorney:  Bruce Davison
Firm:  Davison & Davison
Address:  3351 Artic Blvd
 Anchorage, Alaska 99503
Phone: 907-563-6555  Fax: 907-562-7873

Respondent: _____
Address: _____

Phone: _____ Fax _____

Attorney: _____
Firm: _____
Address: _____

Phone: _____ Fax: _____

The below-named Claimant, a party to an arbitration provision contained in a written contract/agreement, dated  May 16, 2002 , hereby demands arbitration pursuant thereto.

Respondent(s) are hereby notified that copies of our arbitration agreement and this Demand for Arbitration are being filed with Dispute Prevention & Resolution, Inc. in Honolulu, Hawaii, along with a request to commence administration of an Arbitration proceeding.

Claimant's Signature: _____    Title  General Manager
(May be Signed by Claimant's Attorney)

Claimant:  GBC, LLC dba Grose Brothers
Address:  205 E Dimond #515
 Anchorage, Alaska 99515
Phone: 907-349-9421  Fax: 907-349-0495

Attorney:  Jason L Bergevin
Firm: Law Offices of Royce & Brain
Address: 1407 W 31st Ave, 7th Fl
 Anchorage, Alaska 99503
Phone: 907-258-6792  Fax: 907-276-2919

Claimant: _____
Address: _____

Phone: _____ Fax: _____

Attorney: _____
Firm: _____
Address: _____

Phone: _____ Fax: _____

☐ The arbitration provision in this matter is governed by Hawaii Revised State Section 658A.
☐ We request an administrative conference with Dispute Prevention & Resolution, Inc. to discuss:
☐ Settlement Procedures ☐ Discovery Issues ☐ Form and Scope of Award of Arbitrator ☐ Other Issues

**To initiate arbitration proceedings:** Claimant should send an original demand, a copy of the complete contract or agreement containing the arbitration provision, and a copy of the relevant pleadings and/or a statement of claims to each Respondent(s) by hand delivery or by U.S. Mail First Class, Certified/Return Receipt Requested. In addition, please send 2 copies of this Demand, the Contract or Agreement, and the pleadings/statement of claims to: Dispute Prevention & Resolution, Inc., 1155 Pauahi Tower, 1001 Bishop Street, Honolulu, HI 96813 (Phone: (808) 523-1234, Fax: (808) 537-1377, E-mail: keithhunter@dpr-adr.com). No filing fees are charged by DPR.

☐ If you would like DPR to contact the other parties to ascertain whether they wish to MEDIATE this matter, please check this box (there is no administrative fee for this service). Mediation is a non-binding process.

## BASSETT CLAIM SUMMARY

| DATE | DESCRIPTION | SUB TOTALS | TOTALS | COMMENTS |
|---|---|---|---|---|
| | **BASE SUBCONTRACT** | | | |
| 16-May-02 | Original Subcontract Amount | $ 4,063,000 | | executed by both parties |
| 1-Mar-02 | Subcontract Mod - Rebar Installation 475 Tons | $ 302,450 | | executed by both parties |
| 14-Aug-02 | Subcontract Mod - Revised Scope of Work | $ 120,000 | | executed by both parties |
| | **Subcontract with Mods** | | $ 4,485,450 | SUBCONTRACT AMOUNT |
| | Rebar Placement Change Order Payment | $ 24,699 | $ 24,699 | RPC change orders DPC agreed to pay. DPC paid this amount with joint check. DPC never formally modified our subcontract. |
| | **Subcontract with Mods and RPC Change Order Payment** | | $ 4,510,149 | |
| | Total payments GBC has received | $ (4,388,729) | | |
| | **Balance due GBC on Base Contract** | | $ 121,420 | Total of all payments made by DPC including $24,699 of RPC's CO paid with joint check. |
| | Open Invoices - Union Trust Funds | $ (83,591) | | Union were paid by DPC |
| | **Total Open Invoices** | | $ (83,591) | |
| | **Total Due GBC on Base Subcontract** | | $ 37,829 | |
| | **GBC CLAIM ITEMS** | | | |
| | Total Due GBC on Base Subcontract | $ 37,829 | | |
| | Equitable Adjustment for Additional Rebar Installed | $ 143,248 | | $302,450 mod to subcontract was for 475 tons. 680 tons actually installed. 205 tons additional at $525/ton with +21% for handling + 10% markup per Subcontract = $143,248 |
| | GBC Change Orders Submitted to DPC | $ 185,035 | | See attached spreadsheet |
| | DCAA Audit adjustment for labor cost increases | $ 94,021 | | |
| | Measured Mile Analysis | to be calculated | | Delays resulting in second season construction due to impacts of site dewatering, delays in rebar delivery and structural steel impacts. |
| | **GBC CLAIM** | | | |
| | GBC's Total Direct Job Costs | $ 5,976,770 | | see attached job cost report |
| | GBC's Subcontract with Modifications | $ 4,485,450 | | |
| | **GBC's Direct Cost Loss** | | $ 1,491,320 | Without Markup |
| | **Small Tools Markup @ 3 %** | $ 44,740 | | 3% small tools markup approved by COE |
| | **Overhead Markup @ 15 %** | $ 223,698 | | 15% overhead markup approved by COE |
| | **Profit Markup @ 10 %** | $ 175,975 | | 10% profit markup approved by COE |
| | **GBC Claim with Markup (small tools, overhead & profit)** | | $ 1,935,733 | |
| | Interest from 9-29-2003 to 1-24-20076 @ 8%, 1219 days | $ 517,185 | | |
| | **TOTAL CLAIM WITH Markup & Interest** | | $ 2,452,918 | |

*DICK PACIFIC / GHEMM Joint Venture*



## SUBCONTRACT AGREEMENT

| PROJECT:<br>BASSETT HOSPITAL REPLACEMENT<br>Contract No. DACA85-02-C-0004 | JOB NO. 752600<br>SUBCONTRACT NO. 752600-06<br>COST ACCOUNT NO. 752600-1303-031000 |
|---|---|
| RETENTION: Per Contract Documents | SUBCONTRACTOR:<br>Federal I.D. 92-0176534 |
| BONDS:<br>( )PERFORMANCE<br>    Total Subcontract Price<br>( )PAYMENT<br>    of Total Subcontract Price<br>(X)NO BONDS REQUIRED<br>PREMIUM PAID BY:<br><br>COMPLETION DATE: November 1, 2005 | Alaska Contractor's License No. 28183<br><br>Grose Brothers<br>205 E. Dimond, #515<br>Anchorage, Alaska 99515<br><br>PH: (907) 522-4767   Fax: (907) 349-0495 |

THIS SUBCONTRACT AGREEMENT ("Agreement") is dated: May 16, 2002.

The Parties to this Agreement are: Grose Brothers, 205 E. Dimond, #515, Anchorage, Alaska 99515 ("Subcontractor"), and DICK PACIFIC / GHEMM, JOINT VENTURE, P.O. Box 35490, Fort Wainwright, Alaska 99703 ("Contractor"). Subcontractor and Contractor agree as follows,

SECTION 1 - CONTRACT DOCUMENTS

(a)    Prime Contract. Contractor has executed a Prime Contract with:    U.S. ARMY ENGINEER DISTRICT, ALASKA dated FEBRUARY 19, 2002 ("Owner"), for complete performance of the following work:

Item No. 0001: Construct Hospital replacement within the Hospital 1.5m lines, except Optional Items, complete.

Item No. 0002: Construct Site Work and utilities beyond the hospital 1.5m lines, except Optional Items, complete.

Item No. 0008 - Option No. 6: Site Monitoring & Surveillance System to include Purchase, installation, and training.

Item No. 0009 - Option No. 7: Monitoring & Surveillance System Maintenance, complete.

Item No. 0010 - Option No. 8: Site Monitoring & Surveillance System, relocation of a camera/transmitter, pole, & power.

Including Amendments 0001 through 0007.

    ("Project"). The Prime Contract, together with its addenda, supplements, amendments, changes or additions, and the Plans and Specifications listed in Exhibit A constitute the Contract Documents.

(b)    Subcontractor Bound by Contract Documents. Pursuant to this Agreement, the Subcontractor agrees to perform a portion of Contractor's scope of work under the Contract Documents in compliance with Contractor's duties, obligations and responsibilities to the Owner. Except as may be expressly provided otherwise in this Agreement, the Subcontractor is bound to the Contractor by the terms and conditions of the Contract Documents and assumes toward Contractor all the obligations and responsibilities that Contractor, by those documents, assumes toward the Owner. Subcontractor's rights and remedies against Contractor under this Agreement shall be limited by and shall not exceed Contractors rights and remedies against the Owner under the Prime Contract, as it relates to Owner issues only. Subcontractor shall not have any direct contact with the Owner or Architect on this Project without Contractor's prior approval. The provisions of the Subcontract and the Contract Documents are intended to supplement and compliment each other. If, however, any provisions of this Subcontract irreconcilably conflict with another provision or with a provision of the Contract Documents, the provision imposing the greater duty on the Subcontractor shall govern.

(c)    Subcontractor Review of Contract Documents. Subcontractor acknowledges it has inspected the Contract Documents pertinent or applicable to its scope of work and its rights and responsibilities under this Agreement.

(d)    Discrepancies or Errors. Subcontractor shall inspect and examine all portions of the Contract Documents as pertain to or may affect its work. Subcontractor shall notify Contractor in writing of any discrepancy, error or inconsistency discovered in the Contract Documents as soon as possible and prior to commencement of its work.



*DICK PACIFIC / GHEMM Joint Venture*

(e)      Preliminary Contract Documents.  If this Subcontract is based on preliminary, outline or otherwise unfinished Plans, Specifications or other Contract Documents, the Subcontractor accepts responsibility for cooperating and coordinating with Contractor, Owner, Architect and Engineer during the development of final Plans, Specifications or other Contract Documents so as not to impose additional work or cost on Contractor or other Subcontractors, or to cause an increase in the Subcontract Price.  If the final Plans and Specifications or other Contract Documents change the scope or character of the work under this Subcontract, then the Subcontract Price will be equitably adjusted based on the extent of such changes, subject to Contractor's receipt of an equivalent adjustment under the Prime Contract.

(f)      Subcontractor Independent Investigation.    Subcontractor certifies that it has conducted its own investigation and is not relying upon any opinion or representation of Contractor regarding the following:

(i)      All portions of the Contract Documents applicable to its work;

(ii)     The location of the job site; and

(iii)    The conditions under which the work is to be performed.

SECTION 2 - SCOPE OF WORK

(a)      Work Required of Subcontractor. Subcontractor agrees to furnish all labor, services, materials, installation, cartage, hoisting, supplies, insurance, equipment, scaffolding, tools and other facilities of every kind and description required for the prompt and efficient performance of all of the Work described in subsection (b), including all work required that is not noted in detail in the Plans and Specifications, but nevertheless is necessary for the completion of Subcontractor's work for the Project in accordance with the Contract Documents.  All such work is included in Subcontract Price, and no extra work claim shall be made for any amount incurred by Subcontractor to meet the requirements of good construction practice or acceptable workmanship.  Any claim for extra work must be related to entirely new or substantially changed work and payment to Subcontractor shall be conditioned upon Subcontractor's recovery from the Owner on any such claim.

(b)      Subcontractor Scope of Work. Subcontractor agrees to perform all:

  Storm Water Pollution Prevention (as it relates to this scope of work), Environmental Protection (as it

  relates to this scope of work, Utilidor System Installation, Structural Concrete Installation, Formwork,

  Concrete, Reinforcing Installation, Cast In Place Concrete Installation, Concrete Cure/Sealer/Hardener

as described in or reasonably inferable from the Contract Documents and in accordance with, but not limited by, the following sections of the Specifications:

  Section 00010, Section 00700, Section 00800, Division 1, Division 2 and Division 3

SECTION 3 - SECURITY INTEREST

The Subcontractor grants the Contractor a security interest in all inventory, raw materials, work in progress, component parts and materials purchased, used or fabricated by the Subcontractor for the Project whether now owned or hereafter acquired for the project and the products and proceeds thereof and agrees to execute appropriate UCC-1 or other forms necessary to effect this agreement.

SECTION 4 - PAYMENT

(a) Subcontract Price.  Subject to the other terms and conditions of this Agreement, Contractor agrees to pay Subcontractor for the performance of this Subcontract, the sum of:

Four Million Four Hundred Eighty Five Thousand Four Hundred Fifty and No/100 ($4,485,450.00) DOLLARS

("Subcontract Price"), subject to additions and deductions only for charges agreed upon or determined in accordance with this Agreement.

(b)      Schedule of Values.  Subcontractor must supply Contractor with a cost breakdown of the Subcontract Price (Schedule of Values) in accordance with Contractor's requirements before execution of Subcontract.  This Schedule shall be used to determine the approved amount of the monthly progress billings.  Such breakdown must be approved prior to acceptance of the first monthly progress billing invoice.

(c)      Invoices.

i.      Invoices shall be submitted to Contractor at:  DICK PACIFIC / GHEMM, JOINT VENTURE, P.O. Box 35490, Fort Wainwright, Alaska 99703 on or before the 1st day of each month. In the event Subcontractor's invoice is not timely received in proper form Contractor may not include the invoice in Contractor's billing to Owner, and payment will not be made until the following pay period.



*DICK PACIFIC / GHEMM Joint Venture*

ii.      Invoices must be submitted on Dick Pacific Progress Payment Request Form (Exhibit "E"), and include a statement of work installed and completed during the billing period.
(d)      Lien Releases and Other Conditions to Payment.
i        Each progress payment invoice must be accompanied by partial lien releases and waivers, including those of applicable suppliers and sub-subcontractors.
ii.      The final payment invoice must be accompanied by final lien releases and waivers, including those of applicable suppliers and sub-subcontractors.
iii.     The required lien release/waiver form is attached as Exhibit "F."
iv.      In addition to these lien release and waiver requirements, before making any payment, Contractor may require that satisfactory evidence be furnished: that all persons supplying labor, materials and equipment to or on behalf of Subcontractor have been paid; and that all taxes and union benefits attributable to the work have been paid.  Such evidence may include a requirement that Subcontractor furnish certified payrolls, receipted invoices and releases and waivers in favor of Owner, Contractor and their sureties, and sworn affidavits, in a form provided by contractor, setting forth amounts owed and paid to sub-subcontractors, suppliers, materialmen or others related to or connected with this Project through Subcontractor, or as to the general financial condition of Subcontractor.
v.       Subcontractor is responsible for any applicable state or local taxes in connection with its work or this subcontract, including but not limited to sales or excise taxes.
(e)      Progress Payments.  Monthly progress payments of properly completed invoices will be made to the Subcontractor as follows:
i.       Progress Payment invoices, as adjusted shall be paid to Subcontractor within ten (10) days after Contractor has been paid by Owner for said work.  Contractor shall have no obligation to make any payment to Subcontractor unless and until payment for such work or costs is received from the Owner; Provided, however, the Subcontractor payments will not be unreasonably withheld due to deficiencies by the Contractor that are not part of this Subcontract scope.
ii.      Each monthly progress payment shall be computed on the basis of the approved breakdown or payment schedule(s), for the work performed during the billing period.
iii.     Contractor shall have the right to adjust any invoice if required by Owner.
iv.      From each invoice, as adjusted, shall be deducted: (1) Retention in the percentage indicated in the box on Page 1 of this Agreement, which may be held by Contractor until final payment; and (2) All charges for material, equipment or services furnished by Contractor to or on behalf of Subcontractor for which Subcontractor has not previously paid. ~~Subcontractor shall not be entitled to interest on retention~~ Subcontractor's entitlement to any interest on retention shall be conditioned upon Contractor's receipt of interest on Subcontractor's retention from the Owner.
v.       No partial payment to Subcontractor shall constitute approval or acceptance of work done or materials furnished hereunder.
vi.      Contractor may deduct from any amounts due or to become due to Subcontractor: (1) any sums owed by Subcontractor to Contractor, including sums due on account of defective work not remedied; (2) sums for claims filed (or where there is sufficient evidence that claims will be filed) because of failure of Subcontractor to pay for labor, materials or equipment furnished; taxes and union benefits due; failure to cure any default of Subcontractor hereunder; or reasonable doubt that Subcontractor can or has the financial ability to complete the work within the time specified.  Upon removal of such causes, the withheld payments shall be promptly made.
vii.     Contractor reserves the right to make payment by joint check or by direct check to Subcontractor's materialmen or sub-subcontractors or any person who has right of action against Contractor or Contractor's surety under law, and all such payments shall be credited against any amounts owed Subcontractor.
(f)      Final Payment.  Final payment of a properly submitted invoice shall be made to Subcontractor as follows:
i.       Subcontractor's final payment will not be released until final completion of ~~the overall project~~ Subcontractor's scope of work, receipt of ~~final~~ payment from the Owner, and all Subcontractor's work and closeout requirements specified have been completed.  These include, but are not limited to:  as-built drawings; operating manuals; certificates of compliance; warranty and guarantee statements; and completion of punch list work.  The warranty period shall start at the completion of the project and per the requirements of the prime contract.  The Subcontractor must cooperate fully with the Contractor in implementing the final closeout requirements.  The Contractor has the right to reserve an offset against the Subcontractor's retention to ensure final closeout of the work.  All close-out documentation must be completed and submitted no later than 14 calendar days after the date of substantial completion or earlier if required by Contract Documents.
ii.      Final payment of the balance due to the Subcontractor will not be made until: (1) ten (10) days after full payment for such work and materials has been received by the Contractor from the Owner; (2) any applicable lien period has expired; and (3) Subcontractor and its sub-subcontractors and suppliers or materialmen shall have



*DICK PACIFIC / GHEMM Joint Venture*

furnished Contractor with a release of all claims against Contractor and its sureties arising under or by virtue of this Subcontract.

(g)     Creation of Trust. Subcontractor agrees that it shall hold all monies paid to it in trust for the benefit of all persons/entities supplying labor, materials or equipment, and for taxes and union benefits due in connection with this Subcontract. Subcontractor shall pay such persons/entities on time and shall not divert any funds paid to any other purpose until the claims of all such persons/entities have been discharged.

(h)     Offset of Payments. If Subcontractor has been overpaid or otherwise owes money to Contractor on any other subcontract or agreement between them, or if claims for backcharge or damages by Contractor against Subcontractor exist on other projects, payments owed under this Subcontract may be offset by such amount.

(i)     Withholding of Payments. In the event Subcontractor has not provided required submissions or has otherwise not fulfilled its obligations under this Agreement, Contractor may withhold all payments otherwise owing to Subcontractor until such time as Subcontractor cures its nonperformance.

SECTION 5-PROSECUTION OF THE WORK

(a)     Timely Progress. Time is of the essence under this Subcontract. Subcontractor shall confer and coordinate with Contractor in scheduling its work. Subcontractor's work and responsibilities shall be performed in a prompt, efficient, workmanlike and diligent manner. Subcontractor shall do all things necessary and incidental to the prosecution of its work whenever such work, or any part of it, becomes available, or at such other times as the Contractor may direct, without claim for additional costs based on any rescheduling ordered or caused by Contractor.

(b)     Progress Schedule. Subcontractor agrees to complete the several portions and the whole of the work covered by this Subcontract by the time or times designated by the progress schedule developed by the Contractor as such progress schedule may be modified from time to time by the Contractor. By preparing or updating a schedule, Contractor does not warrant that the schedule will necessarily be accomplished, or that Subcontractor's work can proceed as indicated. The schedule shall merely depict the Contractor's then best estimate of both the sequence and scheduling of the work to be performed. The Contractor reserves the right to re-sequence, re-schedule and/or accelerate the work to meet the Prime Contract completion date of the project or such designated early finish date without additional compensation being paid to the Subcontractor because of any such change, if this Subcontractor is the cause of this delay. All schedules, supplementary schedules, and related revisions are incorporated by reference into this Subcontract and are collectively referred to as the "Progress Schedule."

(c)     Cooperation With Other Contractors. Subcontractor shall perform its work and responsibilities so as to promote the general progress of the entire Project, and shall cooperate with Contractor, other Subcontractors and other contractors in promoting the general progress of the Project. Subcontractor shall not, by delay or otherwise, interfere with or hinder the work of Contractor, any other Subcontractor, or any separate Contractor of Owner. Subcontractor shall schedule and coordinate its work with Contractor so as to accommodate and not conflict with the locations of any equipment or work furnished by Contractor or other Subcontractors (e.g., tower cranes, man hoist, jobsite offices, storage containers, or separate work in the same location). Any resulting out of sequence work shall not be a basis for claim, and such cost shall be considered included in the Subcontract Price. Any work done by Subcontractor without regard to the work of others shall be removed if necessary to permit proper installation of other work and Subcontractor shall be responsible for the cost of the removal and replacement.

(d)     Delivery Of Materials. Any materials that are to be furnished by the Subcontractor shall be furnished in sufficient time to enable the Subcontractor, Contractor or other Subcontractors to timely and efficiently perform their work on such schedule as Contractor may designate

(e)     Personnel. Subcontractor shall provide sufficient fully qualified administrative and supervisory personnel, and sufficient skilled and properly qualified workmen, timely and properly to perform its work and responsibilities within the schedule or any modification of the schedule ordered by Contractor.

(f)     Layout. Contractor shall establish principal axis lines and levels. Subcontractor shall lay out and shall be strictly responsible for the accuracy of its work and for any loss or damage to other contractors engaged in work on the site by reason of failure of Subcontractor to set out or perform its work correctly. Subcontractor shall exercise prudence so that actual final conditions and details shall result in alignment of finish surfaces in a proper workmanlike manner and meet or exceed specified tolerances.

(g)     Control Of Site. Contractor shall have complete control of the premises on which the work is to be performed and shall have the right to determine the time and sequence in which the various portions of the work shall be installed or the priority of the work of Subcontractor among that of Contractor, other subcontractors or other contractors.



*DICK PACIFIC / GHEMM Joint Venture*

(h)    Adequacy Of Related Work. Subcontractor shall inspect and approve all related, adjacent, underlying or dependent work, materials or services furnished by Contractor or others that may affect, support or underlie Subcontractor's work (Related Work) before commencing such work.  By commencement of its work, Subcontractor acknowledges that all Related Work required to be furnished or performed by Contractor and others has been furnished and performed
and is acceptable to Subcontractor. If Subcontractor fails to notify Contractor in writing and in advance of any defect or deficiency in Related Work so that Contractor may investigate, resolve or remedy prior to Subcontractor's commencement of work, Subcontractor will be liable for all costs necessary to correct or replace both the Related Work and Subcontractor's own affected work for the work within the Subcontractor's control.

(i)    Materials Supplied By Others. In the event the scope of work includes installation by Subcontractor of materials or equipment furnished by others, Subcontractor shall examine the items so provided and approve and accept its condition. Subcontractor shall install the items with such skill and care as to insure a satisfactory installation, and in accordance with all specified requirements and manufacturer recommendations. Loss or damage due to acts or omissions of the Subcontractor shall be charged to the account of the Subcontractor and deducted from monies due under this agreement or otherwise collected from Subcontractor.

SECTION 6 - SUBMISSIONS

(a)    Quality Control. Subcontractor is responsible for its own quality control and shall submit to Contractor for approval a Quality Control Program prior to commencement of operations.

(b)    Detail Drawings. Subcontractor shall furnish Contractor all detailed drawings, lists, samples, schedules, etc. within or related to its scope of work in such number and at such time as may be required by Contractor or Owner for their review and approval. All materials affected by said approvals shall immediately thereafter be ordered. Said approvals shall not relieve Subcontractor of its responsibility to comply with the requirements of the Contract Documents and this Subcontract.  Contractor reserves all rights and remedies against Subcontractor on account of defective work or materials or other default of Subcontractor, whether or not readily discoverable, notwithstanding any such approval by Contractor.

(c)    Shop Drawings. Subcontractor shall be responsible for the timely preparation and submittal of shop drawings, material approvals, and other documents requiring Contractor, Owner or Architect approval. No extension of time will be granted to the Subcontractor for delays caused by improperly prepared documents requiring revisions nor delayed submittal of documents for approval. The entire responsibility for proper dimensions for prefabrication of any part of Subcontractor's Work shall rest with Subcontractor. Subcontractor shall submit all shop drawings and samples through Contractor.

(d)    Delivery Schedule.  Subcontractor shall submit to Contractor for approval expediting and delivery schedule for Equipment and Materials incorporating the following: item, vendor, manufacturing time, delivery time, shipping company, vessel, date due on the Islands, and date due on site.  An updated Schedule of Equipment and Materials will be required prior to the release of the Subcontractor's monthly progress payment. Subcontractor shall submit updated schedules from time to time as required by Contractor. Upon request of Contractor, Subcontractor shall furnish Contractor unpriced copies of all material orders and order acknowledgments from its sources of supply.

(e)    Substitutions.  Subcontractor may submit or propose substitutions for approval.  If a substitution is permitted, the Subcontractor shall guarantee that the material and/or equipment substituted is in accordance with and will meet the performance and other requirements of the Contract Documents. If the material or equipment differs from that specified, and even if accepted through value engineering or change, the Subcontractor will be responsible for the consequences that may arise out of any failure, defect, deficiency, or impact on other work and shall assume all added costs for changes in construction design or engineering work that results due to the acceptance of the substitution. In any case, where the material or equipment submitted deviates from the Contract Documents, including performance characteristics, the Subcontractor must so stipulate, clearly document, and identify such deviations as part of the submittal procedures.

(f)    Deviations. No deviations from the Contract Documents, or changes in design or dimensions, may be made without prior submission to and approval from Contractor. Regardless of such approval, if Subcontractor does deviate from the Contract Documents, or makes changes in design, including dimensional changes, either through shop or fabrication drawings or actual field work, it shall accept all responsibility for the structural, functional and aesthetic adequacy of the changed work, and for acceptance of such changes by Owner or Architect. Any structural, functional or aesthetic deficiencies which may develop because of such changes shall be remedied by the Subcontractor.  The cost of any additional work, rework or repair work incurred by Contractor, other subcontractors or other contractors resulting from such deficiencies shall be borne by the Subcontractor.

(g)    Design Drawings. If Subcontractor is responsible for design drawings, such will be submitted in advance for the approval of Contractor, Architect and Owner. Regardless of such approval, Subcontractor shall retain



*DICK PACIFIC / GHEMM Joint Venture*

and accept all responsibility for structural, functional, aesthetic and design adequacy of work represented by such drawings and for acceptance by Owner and Architect of such drawings. Any structural, functional or aesthetic failure or deficiency which may result from such design drawings shall be remedied by the Subcontractor. In addition, Subcontractor shall bear all resultant costs such as specified above and any architectural and engineering charges, loss of rent, and any damages which may result.

(h)    Insurance Certification. Before commencing any work or delivery of materials, Subcontractor shall furnish the Contractor a certificate of insurance, giving evidence that all insurance required of Subcontractor is in force and clearly stating that the same will not be canceled or materially changed without giving thirty (30) days advance written notice to the Contractor. Contractor may direct Subcontractor to stop or suspend work and may withhold payments otherwise due to Subcontractor after receipt of notice of cancellation or material change, until reinstatement or replacement of any canceled policy is received by the Contractor.  The requirement for carrying insurance hereunder shall not be in derogation of other provisions of this Subcontract. Certificates provided hereunder shall make reference to all provisions and endorsements referred to above and shall be signed by an authorized representative of the insurers. Subcontractor will, upon written request from the Contractor provide certified copies of the policies.

(i)    Sub-subcontractors And Suppliers.  Subcontractor shall submit and obtain Contractor's prior written approval, within thirty (30) days of the date of execution of this Subcontract, in the case of any of Subcontractor's work to be sub-let to sub-subcontractors and suppliers.

## SECTION 7 - GUARANTY

Subcontractor guarantees that the work shall be completed in strict accordance with the requirements of the Contract Documents and that for a period of one year after acceptance of the work or for such longer period thereafter as may be provided in the Contract Document, the work shall be free from defects in workmanship, materials and equipment, and that equipment or materials furnished hereunder shall comply in all respects with the Contract Documents.  The Subcontractor warrants to the Contractor, the Architect and the Owner that all materials and equipment furnished hereunder shall be new unless otherwise specified, and that all work under this Subcontract shall be of good quality, free from faults and defects and in strict conformance with the Contract Documents.  The Subcontractor shall remove, replace and/or repair at its own expense and at the convenience of the Owner any workmanship, materials and equipment or materials furnished hereunder with respect to which defects shall appear, and any equipment furnished hereunder which shall fail to develop ratings, capacities or characteristics required by the Contract Documents, at any time within a period of one year after acceptance of the work or within such longer period thereafter as may be provided in the Contract Documents.  The Subcontractor shall also pay all costs necessary to remove, replace and/or repair any other work which may be damaged in removing, replacing or repairing any portion of the work. The rights provided in this paragraph shall be enforceable by the Contractor and the Owner and shall be in addition to any other rights or remedies at law or equity.  Subcontractors will supply all written, signed, or other guarantees required by the Contract Documents.

## SECTION 8 - CHANGES

(a)    Contractor's Right to Make Changes. The Contractor may at any time by written order, and without notice to the Subcontractor's sureties, make changes in, additions to and omissions from the work to be performed and materials to be furnished under this Subcontract. Contractor may also use details and methods of construction other than those indicated on the Plans and Specifications.

(b)    Requirements of Subcontractor Claims for Changes.

i.    If Subcontractor shall claim that any such change alters his scope of work or increases the cost or time of performance of his work, he shall notify Contractor in writing, within seven (7) days of the receipt of such order  An equitable adjustment, if appropriate, in the Subcontract Price shall be agreed upon in writing by the parties, but Subcontractor shall not delay proceeding with the work as changed pending such agreement.

ii.    No claim by Subcontractor for additional compensation, whether for changes or for extra labor or materials furnished, or otherwise, shall be made or paid unless performed or furnished pursuant to a prior written order signed by Contractor and unless within seven (7) days of such change or performance of such extra work Subcontractor has given written notice of its claim for additional compensation to Contractor in the manner provided in the Contract Documents for like claims by the Contractor upon the Owner.

iii.    If Owner shall order any changes, including additions, reductions or deletions, in the work to be performed by Subcontractor, and if by reason thereof any claim shall be made by Subcontractor for an extension of time or for additional compensation, such claim shall be subject to any claims procedures specified in the Contract Documents and shall be allowed by Contractor only if allowed by Owner and then only to the extent allowed.  If any Subcontractor claim is presented together with claims of Contractor or others, Contractor shall determine Subcontractor's share of any award by Owner.

iv.    Any extra, changed or additional work performed by Subcontractor, whether ordered by Contractor or Owner, shall be performed in accordance with the terms and conditions of this Subcontract.



*DICK PACIFIC / GHEMM Joint Venture*

v.    Where changes involve both additions and deletions in cost of the work, markups shall be applied to the net change.

vi.    Sales and use taxes shall be applied after markups have been applied.

vii.    Proposals for extra work or changes shall be submitted in detail itemizing quantities, unit costs, man-hours, rates, etc. as required by the Contractor, including supporting documentation, invoices, certified payroll, etc.

viii.    Extra work not reimbursable by the Owner will be charged at Cost plus ten percent (10%) overhead and ten percent (10%) profit. tax only. No overhead or profit will be added.

ix.    Subcontractor shall include all Subcontractor Bond Premium costs (if Subcontractor is bonded) in all change proposals. Payment of invoices issued by Subcontractor's Bonding Company for additional premiums resulting from added costs for changed work will be the responsibility of the Subcontractor.

x.    Subcontractor's overhead and fee applicable to the cost of extra work is subject to approval by the Contractor, the terms of the prime contract and acceptance by the Owner. There shall be no additional charges for job expense nor field overhead.

(c)    Contractor may at any time request, and Subcontractor shall provide, a breakdown of unit prices, labor burden, mark-ups, overhead, fee or other expenses to be charged on changes. If Contractor so elects, these percentages and amounts shall apply on any subsequent changes. These Subcontractor markups shall not exceed any amounts stipulated in Contract Documents.

SECTION 9 - INSPECTION

(a)    Owner/Contractor Inspections. Subcontractor shall provide sufficient, safe and proper access at all times for inspection of the work by Contractor, Owner, or their authorized representatives, and shall within twenty-four (24) hours after receiving written notice from Contractor proceed to expose any portion of the work in question by the Owner or his representatives. Should the exposed work prove to be in compliance with the Contract Documents, Subcontractor shall be paid for cost of exposure and replacement. Should exposed work not be in compliance, the cost of correcting any rejected work, including the cost of retesting to determine the adequacy of the corrected work and including any incidental charges from other trades, shall be charged to by the Subcontractor.

(b)    Building/Permit Inspections. Subcontractor shall coordinate all inspections of Subcontractor's work as required by any authorized agency, permit or applicable code. Subcontractor must schedule inspections in sufficient time so as not to restrict Contractor or other Subcontractors from completing their portions of the work.

SECTION 10 - DEFAULT BY SUBCONTRACTOR

(a)    Events of Default. The following constitute events of Subcontractor default and the existence of any of them entitles the Contractor to exercise the remedies set forth in Section 10(b) below:

i.    The Subcontractor fails to commence work at the time required;

ii.    The Subcontractor fails to prosecute the work diligently or to make the progress required;

iii.    The Subcontractor fails to complete all of the specified work within the time stated herein;

iv.    The Subcontractor fails to furnish a sufficient number of properly skilled workmen or sufficient quantity of suitable materials or adequate equipment to meet any original or revised progress schedule;

v.    The Subcontractor becomes involved in a labor difficulty;

vi.    The Subcontractor fails to perform the work in the order and sequence directed;

vii.    The Subcontractor fails to correct or replace any damaged or defective work or materials;

viii.    The Subcontractor is adjudged bankrupt or becomes insolvent, or files or is subject to any arrangement, reorganization or other bankruptcy proceeding, or is subject to any receivership proceeding;

ix.    The Subcontractor shall make an assignment for the benefit of creditors;

x.    If an individual, the Subcontractor is deceased, disabled, or loses legal capacity so as not to be capable of timely completion of the work required by this Subcontract;

xi.    If a business entity, the Subcontractor is dissolved or its existence terminated;

xii.    The Subcontractor fails to perform any of the terms and conditions of this Subcontract required by it to be performed; and/or

xiii.    The Subcontractor otherwise engages in any act or omission that materially interferes with or obstructs Contractor's efforts timely and properly to fulfill its obligations to the Owner, other subcontractors, suppliers or others in connection with the Project.

(b)    Remedies Upon Default. If any of the events of default enumerated in Section 10(a) shall occur, the Contractor in its sole discretion, and without prejudice to its other rights afforded herein or by law, has the right to any or all of the following remedies:

i.    Upon giving the Subcontractor written notice, the Contractor shall have the right and hereby is authorized by Subcontractor:

*DICK PACIFIC / GHEMM Joint Venture*

(A)     To expedite deliveries;
(B)     To procure and furnish such labor, equipment, materials and supplies as may be required to correct any such default;
(C)     To terminate the employment of the Subcontractor for said work; and/or
(D)     Without posting a bond, to enter upon the Subcontractor's premises, the job site or any other location where the Subcontractor has stored tools, materials, equipment, plans, drawings, schedules or other documents, that have been ordered, prepared or maintained by Subcontractor in furtherance of the work pursuant to this Subcontract, and:
(1) Take custody and control thereof;
(2) Use such to complete the work itself; and/or
(3) Provide such for use by others employed to complete the work;
ii.     To require the Subcontractor to provide within three working days of a written demand, adequate written assurances of its ability to perform satisfactory to Contractor; and if such assurances are not timely forthcoming are not satisfactory to Contractor, or are not observed by Subcontractor, to proceed in accordance with Section 10(b)(i) above, or
iii.    If the Contractor exercises any of the remedies set forth in Section 10(b)(i) above, the following shall apply:
(A)     Contractor may charge to Subcontractor the entire cost and any expense incurred by Contractor in connection therewith, including deducting any such cost and expense from any monies then due or which may thereafter become due to Subcontractor.
(B)     If Contractor elects:
(1) To terminate the employment of the Subcontractor for said work; and/or
(2) To complete or have such work completed by others,
the Subcontractor shall not be entitled to receive any further payment pursuant to this Subcontract until the work is completed and has been accepted by the Owner.
(C)     When the work is completed and has been accepted by the Owner, Subcontractor shall only be entitled to receive:
(1)     Payment for work performed prior to the date of termination of its employment pursuant to this Subcontract or the date the Contractor elects to take over and complete or have the work completed; and
(2)     A reasonable sum for use of Subcontractor's tools, equipment, materials and supplies, subject to set-off of any expenses incurred by Contractor attendant to such termination and/or takeover of completion of the work. ~~Subcontractor agrees it has no claim with respect to the balance, if any, remaining in the Subcontract, and that if Contractor is able to achieve a savings with respect to the balance of the work, Contractor is entitled to retain such savings.~~
(D)     In the event, the set-off amount exceeds the amount owed to Subcontractor for work performed prior to the date of termination of its employment pursuant to this Subcontract or the date the Contractor elected to takeover completion of the work, the difference shall become immediately payable by Subcontractor to Contractor.
(E)     For purposes of Section 10 "expense" shall include, but not be limited to, the costs of the Contractor in completing the work, including labor, materials, equipment, all legal expenses, compensations for additional administrative and supervisory services, all charges by others employed or retained by Contractor to complete or correct any part of the work, overhead, profit and any consequential damages suffered by Contractor as a result of Subcontractor default, including liquidated damages assessed by the Owner.
(F)     Contractor shall certify the amount of such expenses, which shall be binding on the parties hereto.
(G)     Contractor shall be entitled to a lien upon any property of Subcontractor as security for payment of such expenses to Contractor.
iv.     Contractor has the discretion whether to exercise its remedies in this Section 10 - Default By Subcontractor. If an event of default occurs, the Contractor may elect not to immediately pursue its remedies in this Section 10. Such election does not constitute a waiver of Contractor's right to pursue such remedies.
(c)     Failure of Procure Materials. If Subcontractor cannot supply materials required by the specifications and cannot get alternatives approved, Contractor
may at its option then provide such materials, the installation of them, or both at the expense of Subcontractor.
SECTION 11 – INDEMNIFICATION
(a)     Claims. Subcontractor shall save, defend, indemnify and hold harmless
(1) the Contractor, its employees, agents, officers, directors and shareholders
(2) the Owner, and its respective employees, agents, officers, and
(3) any other indemnitee or party identified or required under or by the Contract Documents,



*DICK PACIFIC / GHEMM Joint Venture*

from and against any and all loss, expense, demands, liability, damages or claims, including the obligations of the Contractor to the Owner under the Contract Documents, including, but not limited to, claims arising from injuries or death of persons (including agents and employees of Owner, Contractor or Subcontractor or any person on the work site) or damage to property, including but not limited to property of Contractor or Owner, arising directly or indirectly out of, or in any way resulting from or related to, Subcontractor's operations or performance under this Agreement, and will reimburse and pay to Contractor any loss, expense, damage or any expenditures, including attorneys' fees and costs, Contractor may incur by reason of such matters. If requested by Contractor, Subcontractor will at Subcontractor's sole expense defend any lawsuits arising hereunder. Nothing herein should be construed to require indemnification to Owner or Contractor, or other indemnities or their respective officers, employees or agents for any loss, liability, damage or expense arising from the sole negligence or willful misconduct of Owner or Contractor or other indemnities or their respective officers, employees or agents.

(b)      Patents. Subcontractor shall defend and indemnify the Contractor against and save it harmless from any and all claims, suits, liability, expense or damage for any alleged or actual infringement or violation of any patent or patent right arising in connection with Subcontractor's performance of this Subcontract.

(c)      Liens or Bond Claims. Subcontractor shall defend and indemnify the Contractor against and save them and the premises harmless from any and all claims, suits or liens, by others than the Subcontractor, arising in connection with Subcontractor's performance of this Subcontract.

(d)      Breach. Subcontractor shall indemnify the Contractor and Owner against, and save them harmless from, any and all loss, damage, costs, expenses and attorneys' fees suffered or incurred on account of ~~any~~ this Subcontractor's breach of the obligations and covenants of this section, and any other provisions or covenant of this Subcontract.

SECTION 12 - BONDS

(a)      Performance and Payment. If required by Contractor, as indicated on Page 1 hereof, Subcontractor shall furnish to Contractor a Performance Bond and a separate Labor and Material Payment Bond, each in the amount specified on Page 1 hereof, in the form and with a surety satisfactory to Contractor. The premium for such bonds shall be paid by the party indicated on Page 1 hereof. Any change in, or deviation from this Subcontract or the Contract Documents, shall not in any way release or exonerate, in whole or in part, any surety on any bond given in connection with this Subcontract. Said bonds shall extend to any extra work performed or guaranty or warranty provided by Subcontractor pursuant to this Subcontract.

(b)      Contractor's Right to Require During Project. Even though not previously required, the Contractor may, at any time after this contract is signed, require the Subcontractor to furnish a Performance Bond and a separate Labor and Material Payment Bond in form and with a surety satisfactory to Contractor and in an amount to be designated by Contractor but not exceeding the probable ultimate cost of the work to be performed by Subcontractor under this Subcontract. If Subcontractor cannot deliver the bond within ten days after demand, Contractor may eject Subcontractor from the job, and Subcontractor will pay Contractor any amount by which Contractor's total cost of the work required by this Subcontract exceeds the cost established by this Subcontract.

(c)      Absent Bonds. If required by Contractor, Unbonded Subcontractors shall be required to complete documents and comply with the procedures described below before each payment can be received: (1) Submit certified payroll forms confirming that all employees have been paid and that the proper deductions have been withheld as required by law; (2) Submit lien releases from all suppliers or subcontractors; (3) Submit confirmation from local agencies that all tax payments are current (including withholding); (4) Agree that payment to suppliers/sub-Subcontractors, tax authorities, union trust funds or other entities be by joint check or that any amounts Subcontractor owes to such entities may be paid directly by Contractor with full credit against its obligations to Subcontractor under this Agreement; and (5) Submit certified union trust fund and union dues payment forms. A completed form must be submitted for each supplier/sub-Subcontractor that Subcontractor uses on this project.

SECTION 13 - INSURANCE

Subcontractor, at its expense, shall procure and maintain insurance on all of its operations with underwriters approved by Contractor which shall include the following. The insurance limits under this Section shall be written for coverage amounts not less than those that are stated in Exhibit "C:"

(a)      Worker's Compensation and Employer's Liability insurance. The Worker's Compensation Insurance shall provide benefits as prescribed by statutes and law of the jurisdiction in which the work is to be performed.

(b)      Commercial General Liability Insurance including: (1) Comprehensive form; (2) Premises-Operations; (3) Explosion & Collapse hazard; (4) Underground hazard; (5) Products-Completed Operations hazard; (6) Contractual insurance; (7) Broad Form Property Damage; (8) Independent Contractors; (9) Personal injury; (10) Policy shall be on an occurrence basis.

*DICK PACIFIC / GHEMM Joint Venture*

(c)     Auto Liability and No Fault: (1) Owned vehicles; (2) Hired vehicles; 3) Non-owned vehicles.

(d)     All insurance policies required in paragraph (b) and (c) above are to be endorsed to name the Contractor, the Owner and designees of the Owner, as Additional Insureds, solely as respects work performed by the Subcontractor, and that such coverage as is afforded by such policies, is to be primary, and any other insurance in force for the Contractor or other listed Additional Insured will be excess and non-contributing.

(e)     Waiver of Subrogation. Subcontractor waives any rights against the Contractor, Owner, any other indemnities or party identified or required under or by the contract documents or their agents, officers or employees, for damages caused by perils to the extent covered by insurance provided in this Section, except such rights as it may have to the proceeds of such insurance. The Subcontractor shall require similar waivers from its subcontractors and suppliers. If the policies of insurance referred to in this article require an endorsement to provide for continued coverage where there is a waiver of subrogation, the owners of such policies will cause them to be so endorsed.

SECTION 14 - DELAY OR STOPPAGE OF WORK

(a)     Delay. If completion of the work is delayed due to a combination of circumstances, including delays by the Contractor and/or Subcontractors, any damages assessed against the Contractor shall be apportioned to the various Subcontractors in accordance with their degree of responsibility as determined by the Contractor.

(b)     Termination. If Owner shall, with or without cause, terminate the Prime Contract, stop or suspend the work, fail to pay Contractor any sum when due or default under the Prime Contract, Contractor may stop or suspend the work hereunder but shall not be liable to Subcontractor for any loss or damage suffered by Subcontractor except as follows. If Owner shall pay Contractor for the work performed by Subcontractor prior to any such stoppage or suspension, Contractor will thereupon pay Subcontractor for such work the extent so paid.

SECTION 15 - CLAIMS

(a)     Claims for Extras. Any claim for extra compensation by Subcontractor must be made in writing within seven (7) days of the event giving rise to the claim, or at least five days prior to the deadline for Contractor to submit such claim to the Owner under the Contract Documents, whichever is less. This notice of claim must describe in detail the basis of the claim, together with all supporting documentation, and the precise amount of the claim.

(b)     Subcontractor Bound by Prime Contract. If Subcontractor's claim arises in whole or in part from any act or omission by Owner or for which Owner is responsible, or if Contractor elects to include Subcontractor's claim in a claim to the Owner, Subcontractor shall comply with and be bound by any applicable claims or arbitration procedures in the Contract Documents. If Contractor believes the claim has potential merit, Contractor shall submit any such claim to Owner and prosecute the same on behalf of Subcontractor, with full cooperation by Subcontractor and at Subcontractor's expense, or at Contractor's option, may authorize Subcontractor to pursue such claim in Contractor's name. Any decision to submit Subcontractor's claim to the Owner shall not be an admission of, or agreement by, Contractor as to the merits of the claim. In the event Contractor notifies Subcontractor that its claim is or will be submitted to the Owner by Contractor, or Subcontractor is authorized to pursue such claim directly, Subcontractor shall forego and dismiss all proceedings or actions against Contractor, and stay any lien or other proceedings until a final decision or agreement is reached on the claim to the Owner. If Owner shall award additional compensation or damages or an extension of time therefore, Contractor shall award the same to Subcontractor to the extent so awarded. If any claim of Subcontractor is presented together with claims of Contractor or others, Contractor shall determine Subcontractor's share of any award by Owner.

(c)     Time Extension. Should the Subcontractor's performance of this Subcontract be delayed by any acts of the Contractor, other Subcontractors, or the Contractor's suppliers, or delayed by any acts or causes which would entitle the Contractor to an extension of time under the Contract Documents, the Subcontractor shall receive an equitable extension of time for the performance of this Subcontract, but shall not be entitled to any increase in the Subcontract price or to damages or additional compensation as a consequence of such delays, unless the Owner is liable and pays for such delays. Under no circumstances shall the Subcontractor's time of completion be extended to a date which will prevent Contractor from completing the entire project within the time specified in the Contract Documents. Contractor will pay the Subcontractor the amount paid by the Owner for the Subcontractor's delay.

(d)     Restriction on Extensions.

i.     No extension of time, for any cause whatever, shall be claimed by, or granted to, the Subcontractor unless the Subcontractor shall have made written request upon the Contractor for such extension within forty-eight (48) hours after the cause of such extension occurs, or, within sufficient time to permit the Contractor to give notice to the Owner within the time allowed by the Contract Documents for such notice.

ii.     No extension of time shall, in any event, be granted to the Subcontractor for delay by the Subcontractor in preparing and submitting drawings, schedules, lists, catalogue cuts and other such documents requiring



**DICK PACIFIC / GHEMM Joint Venture**

approvals of Owner or Architect when such documents are not properly prepared or when the Subcontractor by the exercise of reasonable diligence and judgment could have anticipated and avoided the delay.

(e)    Force Majeure. In the event Subcontractor falls behind the Contractor's schedule, except for reasons beyond Subcontractor's control (strikes, Acts of God), the Subcontractor shall work overtime, increase manpower and equipment and/or airfreight materials as required to regain lost time at no additional cost to the Contractor. Subcontractor is also responsible for the control of its sub-subcontractors and Suppliers. Late delivery of materials (unless it is the result of strikes or an Act of God) will not be accepted as an occurrence that is beyond the Subcontractor's control.

SECTION 16 – LIENS OR BOND CLAIMS

(a)    Subcontractor's Obligations. Subcontractor shall turn said work over to Contractor free from and clear of all claims, encumbrances, liens, demands, suits, claims against Contractor's bond or surety, for labor, material, equipment and taxes and shall defend, indemnify, protect and save harmless Contractor and Owner and each of them, from all claims, lawsuits, encumbrances and liens arising out of or alleged to arise out of the performance of this Subcontract. If requested by Contractor, Subcontractor will at its own expense defend any suit, claim or lien proceeding brought against the Owner, the Owner's Property, Contractor or Contractor's bond by any person or entity allegedly employed by or furnishing material, equipment or labor to or on behalf of Subcontractor, under this Subcontract or on the Project. Subcontractor shall promptly pay any such lien or claim established in court or arbitration. If Contractor, at its option, defends any such suit or lien proceedings, Subcontractor shall reimburse Contractor for all obligations incurred by it in such defense (including attorney's fees) and all sums paid by it in discharging any such lien or claim. If any subcontractor or supplier of Subcontractor, or other person or entity to which Subcontractor is, or is alleged to be, responsible for payment, including but not limited to union trust funds, should file any lien upon the Project, Subcontractor shall immediately bond around or otherwise cause the dismissal of such lien at its own cost.

(b)    Contractor's Option. In the event of the failure of Subcontractor during the progress of said work, or any time thereafter, to pay for all materials and labor used in the prosecution of said work, Contractor may, at his option, pay all such claims for labor and materials and charge the amounts to Subcontractor. It is understood and agreed that the full and faithful performance of this agreement on the part of Subcontractor (including the payment of any obligations due from Subcontractor to Contractor, and any amounts due to labor or materialmen furnishing labor or materials for said work) is a condition precedent to Subcontractor's right to receive payment for the work performed.

SECTION 17 - MATERIALS AND STORAGE

(a)    When the Subcontractor does not install all material furnished under this Subcontract, such material as is not installed is to be delivered FOB job site, or other designated storage area, including all applicable taxes.

(b)    Storage. Contractor may at Subcontractor's request provide storage facilities on the job site or at a suitable mutually agreed upon offsite location for use by Subcontractor to store materials to be incorporated in his work, or in the alternative, subcontractor may, with the approval of Contractor, and at Subcontractor's expense, secure and use storage facilities at other offsite locations. If Subcontractor elects to use any of such facilities, Subcontractor shall provide at Subcontractor's expense all necessary insurance coverage, security, transfers to and from such facilities and all other incidental costs. Risk of loss or damage during such period of storage and during transit to and from such storage facility shall be borne by Subcontractor.

(c)    Loss or Damage. In the event of any loss or damage to such stored materials for any reason whatsoever, Subcontractor will replace or repair as appropriate so that required materials shall be incorporated in a timely manner as though the loss or damage had not occurred, and such replacement or repair shall be entirely at Subcontractor's expense, whether or not such loss is covered by insurance, and any damages, loss, claim, charges, liability or penalty of any nature whatsoever attributable to delays in providing such materials shall be borne entirely by Subcontractor. Subcontractor shall indemnify and hold Contractor harmless from any and all claims and liabilities resulting from such delay.

(d)    Subcontractor Indemnification of Contractor. Subcontractor shall indemnify and hold harmless Contractor from any and all claims and liabilities that may be incurred by or assessed against Contractor in connection with Contractor providing such storage facilities in connection with Subcontractor's materials or in connection with any other materials in such facilities damaged or destroyed in connection with the storage, deliveries or transfer of Subcontractor's materials.

(e)    Payments. If payments are to be made on account of such materials not incorporated in the work but delivered and suitably stored as provided above, such payments shall be conditioned upon submission by Subcontractor of executed security agreement, financing statement (UCC-1), lien search and/or releases, bills of sale or such other procedure satisfactory to Contractor and Owner to establish the Owner's title to such materials or otherwise protect the Owner's interest including applicable insurance and transportation to the site. Insurance coverage shall be provided by Subcontractor at Subcontractor's expense for the full replacement value



*DICK PACIFIC / GHEMM Joint Venture*

of such materials and shall cover for all risk of loss. Such payment shall not in any way alter Subcontractor's responsibilities enumerated hereinabove and such materials shall be in care, custody and control of Subcontractor until installed in the work and accepted by Owner.

(f)    Jobsite Conditions. Subcontractor acknowledges that jobsite conditions may be extremely crowded. Jobsite storage area may be made available subject to the Contractor's approval. Items stored at the jobsite will be at the Subcontractor's own risk. Designated storage areas are not to be considered as permanent. Stored items may require immediate relocation at Subcontractor's expense. Subcontractor is responsible for securing and protecting Subcontractor's own property. Subcontractor hereby releases Contractor from any liability for lost or stolen materials. Subcontractor shall be responsible for all off-site storage costs.

## SECTION 18 - RESPONSIBILITY AND PROTECTION OF WORK

Subcontractor shall have full and complete responsibility for and shall secure, protect and maintain in good condition all work done hereunder until final acceptance by Owner and Contractor. Subcontractor further shall protect the workmen, property and equipment of Owner, Contractor and other subcontractors against injury or damage in any way arising out of or connected with the operations conducted by Subcontractor hereunder. Subcontractor waives all rights it might have against Contractor for loss or damage to Subcontractor's work, property or materials. If Subcontractor shall damage the work or installation of Contractor or other subcontractors, Subcontractor shall promptly pay to Contractor all costs incurred in repairing the damage.

## SECTION 19 - SUPERVISION

(a)    Subcontractor shall keep a representative, satisfactory to Contractor, at the job site during all times that Subcontractor's work is in progress, who shall be authorized to represent Subcontractor as to all phases of the work. Subcontractor shall promptly notify Contractor of his name, address and telephone number and of any change.

(b)    Periodic Subcontractors' meetings will be held. The Subcontractor's supervisory personnel (and if requested, an Officer of the company) are required to attend.

## SECTION 20 - CLEANUP

(a)    Subcontractor shall be responsible during the course of his work for maintaining a clean work area, shall comply with all instructions from Contractor with respect to conditions at the site, shall remove its rubbish, debris, and any excess materials, tools and equipment and shall clean and repair any areas soiled or damaged by it. If Subcontractor shall fail to do so, Contractor may, upon forty-eight (48) hours' notice, perform the same and charge the cost thereof to Subcontractor. Notification to Subcontractor's foreman or superintendent will be considered prior notice.

(b)    The Subcontractor will be charged a prorated portion of the debris box charges if he elects to dispose of his litter in the Contractor's trash bins.

## SECTION 21 - LABOR CONDITIONS

(a)    Removal of Subcontractor's Employee. Employment of labor by Subcontractor shall be effected under conditions satisfactory to Contractor, and Subcontractor shall remove or cause to have removed from the project any employee or employees who are considered unsatisfactory by the Contractor.

(b)    Labor Agreements. Contractor has entered into labor agreements with labor unions, and Subcontractor hereby agrees to comply with and be bound by each and all of the terms and conditions of such agreement or agreements applicable to the Subcontractor's work and Subcontractor agrees to be bound by labor provisions of the Contract Documents to the extent that they apply to Subcontractor. Subcontractor shall require his sub-subcontractors to agree to comply with any of such agreements as may be applicable to his work on the job site.

(c)    Subcontractor Warranty. Subcontractor warrants and agrees that, with respect to any of the work covered by this Agreement which is to be performed at the site of construction, his employees performing such work are and shall be subject to and covered by a current labor agreement with the appropriate trade union. Subcontractor agrees to comply with and obey all of the terms and conditions of each such labor agreement insofar as Subcontractor may lawfully do so. Subcontractor promises to require any of his sub-subcontractors on the job site to make him a warranty and agreement identical to the foregoing.

(d)    Compliance with Laws. Subcontractor shall comply with all applicable laws and regulations relating to discrimination in employment and shall comply with any provisions, in the Contract Documents on that subject, insofar as his own employees are concerned. Labor and Immigration Laws as described in Exhibit "C" are incorporated in this section by reference.

(e)    Subcontractor Duty to Pay. Subcontractor shall pay all payroll taxes, insurance and fringe benefits applicable to its labor and shall provide and pay for any trust fund bonds whenever such may be required. Subcontractor shall provide Contractor, upon its request, satisfactory evidence of such payments having been made.

## SECTION 22 - JURISDICTIONAL DISPUTES



*DICK PACIFIC / GHEMM Joint Venture*

(a)    Unions.  In the event any union or unions representing employees of Subcontractor engage in or become involved in a jurisdictional dispute concerning the assignment or performance of any of the work covered by this Subcontract, Subcontractor promises and agrees that he shall promptly do all things necessary to secure a resolution of said jurisdictional dispute, including compliance with any written plan for the resolution of such disputes to which the Associated General Contractors of America is at the time of the dispute a party on behalf of its members.

(b)    Disputes.  Subcontractor specifically agrees to submit for determination and decision by any tribunal established pursuant to a plan to which the Associated General Contractors of America is a part at the time of said dispute any issue of which union is entitled to perform the work in dispute.  Subcontractor agrees to appear and/or submit such evidence and information as may be requested by such tribunal in order to determine and decide such dispute.  Subcontractor agrees to be bound by, comply with and carry out the terms of any decision, determination or award rendered by such tribunal.

(c)    Subcontractor Duty to Bind Sub-subcontractors.  Subcontractor further agrees that he will bind and require all of his subcontractors and their subcontractors to agree to all of the foregoing undertakings in this Paragraph 22.

(d)    Tribunal.  In the absence of any tribunal established pursuant to any plan for the resolution of jurisdictional disputes to which the Associated General Contractors of America is at the time of the dispute a party, Subcontractor agrees, at his own cost and expense upon request of the Contractor, promptly to take any and all lawful steps to secure a binding and final determination of said jurisdictional dispute by the National Labor Relations Board.

(e)    Subcontractor Indemnification.  Subcontractor agrees to defend, indemnify, save and hold harmless the Contractor from any and all liability, claims and demands by any union with which the Subcontractor has a labor agreement based on any claim that work is not being performed or has not been performed as specified and provided in the agreement between Subcontractor and said trade union.

SECTION 23 - POSSESSION PRIOR TO COMPLETION

Whenever it may be useful or necessary for the Contractor or Owner to do so, the Contractor or Owner shall be permitted to occupy or use any portion of the work which has been either partially or fully completed by the Subcontractor before final inspection and acceptance thereof by the Owner, but such use or occupation shall not relieve Subcontractor of his guarantee of said work and materials or of his obligation to make good at his own expense any defect in materials or workmanship which may occur or develop prior to Contractor's release from responsibility to the Owner.  Provided, however, the Subcontractor shall not be responsible for the maintenance of such portion of the work as may be used or occupied by the Contractor or Owner, nor for any damage thereto that is due to or caused by Contractor or Owner during such period of use or occupancy.

SECTION 24 - SUBCONTRACTOR AS AN INDEPENDENT CONTRACTOR

Subcontractor is an independent contractor and shall, at its sole cost and expense, and without increase in the contract price, comply with all laws, rules, ordinances, and regulations of all governing bodies having jurisdiction over the work and with the safety programs of the Contractor and Owner; shall obtain all necessary permits and licenses therefore; shall pay all manufacturers taxes, sales taxes, use taxes, processing taxes, royalties, license fees, and all Federal and State taxes, insurance and contributions for Social Security and Unemployment which are measured by wages, salaries or other enumerations paid to Subcontractor's employees, or are levied under existing or subsequently enacted laws, rules or regulations. Subcontractor, upon request, shall furnish certified payrolls or other evidence satisfactory to Contractor that any or all of the foregoing obligations have been fulfilled.  Subcontractor represents that it is fully experienced and properly qualified as an expert to perform the class of work provided for herein and that it is duly licensed, and properly equipped, organized and financed to perform said work.

SECTION 25 - COMPLIANCE WITH LAW

The Subcontractor further agrees:  (a) as regards the production, purchase and sale, furnishing and delivering, pricing, and use or consumption of materials, supplies and equipment; (b) the hire, tenure or conditions of employment of employees and their hours of work and rates of and the payment of their wages: (c) the keeping of records, making of reports, and the payment, collection, or deduction of Federal, State and local taxes and contributions: and (d) the performance of this contract in all other respects; that the Subcontractor will keep and have available all necessary records and make all payments, reports, collections and deductions, and otherwise do any and all things so as to fully comply with all Federal, State and local laws, ordinances, rules and regulations and all applicable safety regulations in regards to any and all said matters insofar as they affect or involve the Subcontractor's performance of this Subcontract, all so as to fully relieve Contractor from and protect it against any and all responsibility or liability therefore or in regard thereto.

SECTION 26 - SAFETY PROVISIONS



*DICK PACIFIC / GHEMM Joint Venture*

(a)    Compliance with Laws. Subcontractor will comply fully with all laws, orders, regulations and statutes with respect to safety, accident prevention, safety equipment and practices, and in particular, agrees to comply with Federal (OSHA) and State codes. Subcontractor will conduct inspections to determine that safe working conditions and equipment exist and accept sole responsibility for providing a safe place to work for its employees and for employees of its subcontractors and materialmen and for the adequacy of and required use of all safety equipment.

(b)    Subcontractor Indemnification of Contractor. Subcontractor agrees to indemnify, defend and hold harmless Contractor (including its officers, agents and employees) from claims, liability and loss (including costs and attorney's fees) arising from injury (including death resulting therefrom), damages or other loss caused or alleged to have been caused by any violation or infraction by ~~Contractor or~~ Subcontractor of any law, order, regulation or statute relating to safety of Subcontractor's employees, including but not limited to the use of Contractor's or other's tools, equipment, hoists, elevators, scaffolds, platforms, runways, or temporary structures of any description provided, however, that nothing herein should be construed to require indemnification to Owner or Contractor, or their respective officers, employees or agents for any loss, damage or expense arising from the sole negligence or willful misconduct of Owner or Contractor or their respective officers, employees or agents.

(c)    Safety Meetings. Periodic job safety meetings will be held and Subcontractor agrees his representative, responsible for the performance of this work will attend. Subcontractor covenants it will observe and comply in the performance of the work with all safety regulations as established by Contractor for the work and the site thereof. Subcontractor will report any accidents occurring on his work to Contractor immediately, with a copy of Subcontractor's accident report to be submitted within three (3 ) days.

(d)    Fines. Any fines levied against the Contractor because of practices or conditions of the Subcontractor's operation will be deducted from any payment due the Subcontractor.

SECTION 27 - USE OF CONTRACTOR'S EQUIPMENT AND FACILITIES

Subcontractor shall pay Contractor a reasonable amount for the use of any equipment or facilities owned by Contractor. The use of any of Contractor's equipment or facilities by Subcontractor, whether given, loaned or rented to Subcontractor by Contractor, shall be upon the distinct understanding that Subcontractor uses said equipment or facilities at its own risk and takes the same "as is" and after Subcontractor has satisfied itself by examination as to the condition thereof, and Subcontractor shall assume all responsibility for and hold Contractor harmless from any claims, actions, demands, damages, liabilities, or expenses, including attorney's fees, resulting from the use of same, whether such damage results to his own employees or property or to the employees and properties of others, including Contractor's.

SECTION 28 - PERMITS AND FEES

Subcontractor, shall at his expense, be responsible for all necessary licenses, permits, inspections, ~~certifications, testing,~~ and compliance with all applicable laws, ordinances, rules, regulations, orders and requirements of the city, county, State and Federal government, and of any board or commission or any other duly qualified body having jurisdiction over the work, and shall pay the cost of all permits, assessments and fees required for the performance of Subcontractor's work.

SECTION 29 - SUSPENSION OR ABANDONMENT OF PROJECT

If, as a result of any cause beyond the control of the Owner or Contractor, including, without limiting the generality of the foregoing, fire, earthquake, act of God, war, strike, picketing, boycott or lockout, governmental intervention, or court action, the Owner or Contractor shall consider it inadvisable to proceed with the work hereunder, Subcontractor shall, upon receiving written notice thereof from Contractor, immediately discontinue any further work hereunder until such time as the Contractor may deem it advisable to resume such work or until Contractor shall notify Subcontractor that the project is abandoned. Subcontractor will resume the suspended work hereunder promptly upon receiving notice from the Contractor to do so, and the Subcontractor shall not be entitled to any damages or compensation from the Owner or Contractor on account of any such cessation of work as a result of any of the causes aforesaid. If the project is abandoned, Subcontractor shall be paid for work and material incorporated into the project and other expenses incurred prior to the date of an abandonment to the extent Contractor is paid therefore by Owner.

SECTION 30 - TERMINATION

(a)    In the event Contractor elects for its own convenience, or in the event the Prime Contract is terminated by Owner prior to completion, Contractor shall have the right to terminate this Subcontract at any time and Subcontractor shall be entitled only to payment for that portion of the work which is actually completed or materials actually delivered and accepted by Owner and Contractor, and based only on the Subcontract Price herein set forth.

(b)    There shall be deducted from such payment due as provided in this section the amount of any payments made to Subcontractor prior to the date of termination and any sums owing by Subcontractor to Contractor.



*DICK PACIFIC / GHEMM Joint Venture*

Subcontractor shall not be entitled to any claim or claims of lien against Contractor or against Owner for any additional compensation or damages in the event of such termination and payment.

**SECTION 31 - COMPLETE AGREEMENT**

(a)     This Subcontract constitutes the entire agreement of the parties and supersedes all prior negotiations, proposals or agreements. There are no prior or contemporaneous agreements not included or provided herein. No agent or representative of either party has authority to make, nor is either party relying upon, any representation not expressly contained herein. This Subcontract may be amended only by an agreement in writing signed by authorized representatives of both parties.

(b)     The Contract Documents are incorporated in this Subcontract by this reference, with the same force and effect as if the same were set forth at length herein, and Subcontractor and his subcontractors will be and are bound by any and all of said Contract Documents insofar as they relate in any part or in any way, directly or indirectly, to the work covered by this Subcontract. Subcontractor agrees to be bound to Contractor in the same manner and to the same extent as contractor is bound to the Owner under the Contract Documents, to the extent of the work provided for in this Subcontract, and where, in the Contract Documents, reference is made to Contractor and the work or specification therein pertains to Subcontractor's trade, craft or type of work, then such work or specification shall be interpreted to apply to Subcontractor.

**SECTION 32 - ASSIGNMENT**

Subcontractor may not assign, sublet or delegate, by operation of law or otherwise, any part of this Subcontract, the work to be performed, or any claim or right arising under this Agreement without the prior written consent of Contractor. Any assignment approved by Contractor shall be subject to this Subcontract, and all rights and remedies of Contractor at law or under this Subcontract as against Subcontractor, and its sureties and assigns shall be preserved. The making of any assignment by Subcontractor and any consent thereto by Contractor shall not relieve Subcontractor or its sureties hereunder of any of their obligations, duties, responsibilities or liabilities.

**SECTION 33 - SEVERABILITY**

If any clause or provision of this Subcontract shall be held to be invalid, in whole or in part, then the remaining clauses and provisions, or portions thereof, shall nevertheless be and remain in full force and effect.

**SECTION 34 - NONWAIVER**

Waiver by Contractor of any breach of this Subcontract shall not constitute a waiver of any other breach or of any future breach. No payment made hereunder shall be evidence of the proper performance of this Subcontract by Subcontractor or construed to be an acceptance of defective work or improper materials.

**SECTION 35 - DISPUTE RESOLUTION**

Should a controversy arise between the Contractor and the Subcontractor regarding any matter in this Subcontract, which the parties hereto cannot promptly adjust and determine, or which the Owner cannot decide to the mutual satisfaction of both parties hereto, and which is not subject to or contingent upon the dispute resolution procedures under the Prime Contract, then such controversy shall be submitted to binding arbitration under the administration, and in accordance with the rules of Dispute Prevention & Resolution, Inc. provided that: (1) the Parties shall be entitled to discovery in accordance with the Federal Rules of Civil Procedure subject to a determination of reasonableness by the arbitrator; (2) arbitration shall be before a single arbitrator; (3) either Party may require the arbitrator be selected from ~~a jurisdiction other than Alaska and~~ other than any principal place of business of the other; (4) subject

to the period of any stay pursuant to subsection (8) below, arbitration hearings must commence within six months of the demand for arbitration, and conclude within three months thereafter; (5) hearings shall be held at the project location; (6) Contractor shall be entitled to join any Party to the arbitration which it deems appropriate; (7) Contractor may require Subcontractor to join any arbitration between Contractor and other parties to which Subcontractor is a relevant Party; (8) notwithstanding Subsection 4 above, Contractor may require a stay of any arbitration proceedings with Subcontractor pending final resolution of arbitration or other proceedings with the Owner or other parties involving similar or related issues; and (9) the prevailing party shall be awarded its attorneys fees, expert fees, arbitrator and arbitration administration expenses, costs and other expenses reasonably incurred in connection with the proceeding. Demand for Arbitration shall be filed with Dispute Prevention & Resolution, Inc., and served on the other Party.

**SECTION 36 - CAPTION**

The captions at the beginning of each section of this Subcontract are for convenience only and are to be given no weight in construing the provisions of this Subcontract.

**SECTION 37 - NOTICES**

Notices to be given hereunder shall be in writing and served personally, by mail or by facsimile. When service is by registered or certified mail, postage prepaid, addressed to the party at the address given herein, or at such



*DICK PACIFIC / GHEMM Joint Venture*

other address as shall be designated in writing by certified or registered mail, service is complete effective two (2) days after mailing.  Any other service shall be complete on receipt.

SECTION 38 - MISCELLANEOUS

(a)     As used herein, the term "Owner" shall include and extend to Owner's authorized representative, including the Architect or Engineer designated in the Contract Documents.  Wherever herein used, the singular shall include the plural and the neuter gender shall include the masculine and feminine.  Subject to the provisions hereof regarding assignment, this Subcontract shall inure to the benefit of and be binding upon the heirs, successors, representatives and assigns of the parties hereto.

(b)     This Subcontract shall be interpreted under and pertinent to the laws of the State of Alaska.

SECTION 39 - ADDITIONAL TERMS

Attached hereto(*) or listed hereunder  are additional terms and conditions, which are described as follows and by this reference made a part of this Subcontract as though set forth herein.

> Exhibit 'A'-List of Plans and Specifications*
> Exhibit 'B'-Scope of Work*
> Exhibit 'C'-Additional Conditions*
> Exhibit 'D'-Certificate of Insurance
> Exhibit 'E'-Subcontractor Payment Application
> Exhibit 'F'-Subcontractor & Materialmen Release & Waiver of Lien
> Exhibit 'G'-Equal Employment Opportunity Certification of Compliance
> Exhibit 'H'-Immigration Reform and Control Act of 1986 Certification & Indemnity Statement
> Exhibit 'I' -Dick Pacific/GHEMM, JV Job Site Safety & Health Rules
> Exhibit 'J'-Year 2000 Compliance
> Exhibit 'K'-Sub-Subcontractors & Suppliers Release & Waiver of Lien

IN WITNESS WHEREOF, the parties have executed this Agreement on the date stated above.

SUBCONTRACTOR                    CONTRACTOR

GROSE BROTHERS                    DICK PACIFIC / GHEMM, JOINT VENTURE

By: _____    By: _____
      Its/                                  Its/

16

BASSETT HOSPITAL REPLACEMENT FT. WAINWRIGHT, ALASKA
Job No. 752600

Exhibit "B" – Scope of Work
To Subcontract Agreement No. 752600-06

Grose Brothers _____ 1 of 4

Scope of Work

Subcontract Agreement between DICK PACIFIC / GHEMM Joint Venture herein called "Contractor" and Grose Brothers herein called the "Subcontractor" includes, but is not necessarily limited to, furnishing and installing complete in all respects per the Contract Documents listed on Exhibit "A" attached hereto and made a part of this Subcontract Agreement, and more specifically:

Specification Section(s):

Division 01  - General Requirements as applicable to specifications below:
00010 - Contract form SF1442, Bid Schedule PS-1 thru PS-3, Incorporation document
00700 - Contract clauses, Wage rates
00800 - Special Contract Requirements
01356 - Storm Water Pollution Prevention Measures (as it applies)
01411 - Enviromental Protection (as it applies)
01720 - As Built Drawings (as it applies)
02606 - Utilidor System (structure only)
03100 - Structural Concrete Formwork
03150 - Expansion Joints, Contraction Joints, and Materials
03200 - Concrete Reinforcing (Install only for this Foundation Scope)
03300 - Cast in Place Concrete Structural Concrete (as it applies to this scope)
03370 - Concrete Surface Cure/Sealer/Hardener

The following, although not all-inclusive is intended to compliment the terms and conditions of this Subcontract Agreement and Contract Documents, and help define the subcontractors scope of work.

1. It is the intent of this subcontract to include all concrete and concrete reinforcing work in accordance with the Plans and Specifications to meet all applicable national, state and local codes. Subcontractor is responsible for immediate written notification of any discrepancies. In the event of a discrepancy, the more stringent application shall apply.

2. Subcontractor acknowledges that they have inspected the project area, has a full understanding of the design intent, and has included all labor, equipment and materials necessary to complete the specified work (including items not shown on the contract document, but required to provide a fully operable and functional system).

3. Submit submittals as required by the specifications, in a timely manner, for review by the Contractor and Architect. Subcontractor is not authorized to order materials without approved submittals and an authorization to proceed from Contractor.

4. Review project schedule requirements, and make every effort to expedite critical material deliveries and work.

5. Coordinate all work with other trades through Contractor's Superintendent.

6. Subcontractor is responsible for the security and proper storage of all materials stored on site per manufacturer's recommendations.

BASSETT HOSPITAL REPLACEMENT FT. WAINWRIGHT, ALASKA
Job No. 752600

Exhibit "B" – Scope of Work
To Subcontract Agreement No. 752600-06

Grose Brothers _____ 2 of 4

7. Keep all areas of work clean, neat and orderly at all times during period of Contract. Daily clean up of all construction areas is mandatory.

24.-8. Submit certified payroll records within five (5) calendar days after the regular payment date of the payroll period. Contractor may withhold progress payments until all delinquent records are submitted or, may withhold additional retention if Subcontractor continually fails to submit his certified payroll records on time.

25.-9. Subcontractor includes the coordination of all required inspections for this scope of work. Subcontractor shall immediately notify the Contractor of any problems and/or discrepancies in this regard.

11.-10. Subcontractor shall be responsible for its own horizontal and elevation layout based on survey control points and benchmarks provided by Contractor. Subcontractor is responsible for reviewing the project schedule, and for installing any sleeves or blockouts necessary for this scope of work. Subcontractor shall be responsible for any cost and/or schedule impacts arising from missed (or incorrectly located) sleeves and /or blockouts. Where required by the drawings or specifications, sleeving shall include waterstops.

12.-11. Subcontractor shall be responsible for its own barricades, traffic control and pedestrian control.

13.-12. Subcontractor shall be responsible for clean-up of roadways from dirt, rocks or any other materials directly related to this scope of work. Vehicle tires shall be washed down on site, as necessary, to prevent debris on roadways. Any spills on roadways shall be cleaned immediately. Subcontractor shall maintain all roadways leading into and out-of the jobsite throughout the duration of the project.

14.-13. Subcontractor shall provide the necessary manpower to execute quality work in a safe and timely manner throughout the duration of this project. In the event this subcontractor is unable to meet the agreed upon schedule dates, this Subcontractor shall work overtime to complete this work or to maintain the project schedule at no additional cost to the Contractor.

15.-14. Subcontractor shall not proceed with any "extra work" outside of this contract without a prior written directive from the Contractor.

16.-15. Subcontractor agrees to all Federal Acquisition Regulations included in the Contract documents. In particular, Subcontractor shall pursue and incorporate the requirements of FAR clauses 52.209, 52.215, 52.216, 52.217, 52.219, 52.222, 52.223, 52.227 in any lower tiered subcontracts.

17.-16. Subcontractor shall submit its small business certification within 14 calendar days of signing this subcontract agreement.

18.-17. This Subcontract is subject to the approval of the Owner.

BASSETT HOSPITAL REPLACEMENT FT. WAINWRIGHT, ALASKA
Job No. 752600

Exhibit "B" – Scope of Work
To Subcontract Agreement No. 752600-06

Grose Brothers _____ 3 of 4

19.18.  Provide coordination with the deliveries of the concrete, embeds and reinforcing bar materials that will be supplied by the General Contractor. Material Concrete delays inherent to this scope of work will not be the cause of additional cost by this subcontract.

20.19.  Provide the installation of all cast in place concrete materials that pertain to this scope of work. To include all equipment, scaffolding, hoisting, formwork, shoring etc.

21.20.  Provide the installation of all concrete reinforcing that pertains to this scope of work. Rebar accessories will be provided by this subcontract for installation of this work.

22.21.  Provide the installation of all the concrete embeds and anchor bolts that pertains to this scope of work.

23.22.  Provide all necessary formwork ,work platforms, scaffolding ,safety railings and protection for this scope of work.

24.23.  Provide the utilidor tunnel construction to include the installation and furnishing of the pre-cast lid.

25.24.  Provide all building foundations and exterior foundation elements that tie into the building not limited to loading docks,canopies etc.  Excluding sitework.

26.25.  Provide the installation of all elevated structural concrete work that pertains to the Central Plant Building. All concrete work for the Central Plant Building is included under this scope of work.

27.26.  Provide the installation of all foundation walls to bottom of monolithic beam at the metal deck building areas as shown on the contract documents.

28.27.  Provide the installation of all pony/stem walls to bottom of first level metal deck as shown on the contract documents.

29.28.  Provide the installation of all pilasters and columns to the first level metal deck as shown on the contract drawings.

30.29.  Provide templates for rebar and anchor bolt installation.

31. Provide the grouting under the structural steel base plates at the building foundations.

32.30.  Provide all the required curing, sealers and shake finishes for the performance of this scope of work.

33.31.  Provide the required exposed concrete finishes to include all preparatory work for subsequent paint and waterproofing application.

34.32.  Provide all required control and construction joints as it pertains to this scope of work.

BASSETT HOSPITAL REPLACEMENT FT. WAINWRIGHT, ALASKA
Job No. 752600

Exhibit "B" – Scope of Work
To Subcontract Agreement No. 752600-06

Grose Brothers                                                                                    4 of 4

35.33. Provide all concrete equipment pads as shown on the structural concrete drawings.

36. Provide all required installation of lean concrete to a quantity of 1,500 cubic yards. The subcontract amount will be adjusted based upon the actual quantity that is placed.

37.34. Provide all concrete insulating blankets for the cold weather protection. Winter concrete requirements that required tenting and heating is not included under this scope of work.

38.35. Provide all water stop and expansion joint fillers.

39.36. Provide installation of all expansion joint embeds and required blockouts.

38.37. Provide installation of concrete at all pan filled stairs, from the foundation to level 1.

41.38. It is understood this subcontract includes a ten (10) hour per day per six (6) days a week premiums cost for completion of this scope of work if required to maintain project schedule.

39. Excludes providing the reinforcing steel and ready-mix concrete, to be provided by the Contractor.

40. Excludes trash hauling costs.

42.41. Subcontract amount was derived as follows:

| | |
|---|---:|
| Proposal dated 12/10/01 – Form, pour, finish & cure concrete | $ 4,063,000.00 |
| Proposal dated 2/28/02, revised 3/02 – Install rebar for concrete under this scope of work | $ 302,450.00 |
| Total Original Subcontract Amount | $ 4,365,450.00 |
| | |
| Revised scope of work, per meeting on 8/14/02: | $ 120,000.00 |

    a.  Labor only to install the mud slab wire mesh
    b.  Increase the thickness of the mud slab from 65mm to 75mm
    c.  Labor only to grout the structural steel base plates
    d.  Include the foundation and stem walls at the loading dock and ambulance bay, excludes the slab on grade work in these two areas
    e.  Delete lean concrete (3,400 cy)
    f.  Include the dry shake concrete finish at the Central Energy Plant
    g.  Include the CPE liner membrane at the Central Energy Plant

| | |
|---|---:|
| Revised Subcontract Amount | $ 4,485,450.00 |