RECEIVED
JUL 0 6 2004
DPC-03
DAVISON & DAVISON

FILED
JUL 0 2 2004
UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By _____ Deputy

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES OF AMERICA for the Use and Benefit of REBAR PLACEMENT COMPANY,<br><br>    Plaintiff,<br>  v.<br><br>GBC, LLC CONTRACTORS d/b/a GROSE BROTHERS, *et al.*,<br><br>    Defendants. | A03-73 CV(JWS)<br><br>ORDER FROM CHAMBERS<br><br>[Re: Motion at Docket 74] |
| WASHINGTON INTERNATIONAL INSURANCE COMPANY,<br><br>    Cross-Claimant.<br>  v.<br><br>GBC, LLC CONTRACTORS d/b/a GROSE BROTHERS,<br><br>    Cross-Defendant. | |
| DICK PACIFIC/GHEMM JV,<br><br>    Intervening Plaintiff.<br>  v.<br><br>GBC, LLC CONTRACTORS d/b/a GROSE BROTHERS,<br><br>    Defendant. | |

EXHIBIT 1
Page 1 of 12

## I. MOTION PRESENTED

At docket 74, defendant GBC, LLC Contractors d/b/a Grose Brothers ("GBC") has filed a motion for judgment on the pleadings on the complaint in intervention filed by Dick Pacific/Ghemm JV ("DPG") seeking dismissal on the basis that the claim asserted therein is subject to arbitration under the terms of the contract between the parties. DPG has filed an opposition to which GBC has replied. The matter has been fully briefed. Oral argument was heard on June 25, 2004.

## II. BACKGROUND

DPG was the general contractor on the Bassett Hospital Replacement project at Ft. Wainwright, Alaska. DPG subcontracted with GBC to perform certain concrete work on the project. GBC in turn subcontracted with Rebar Placement Co. ("RPC") to provide services in performing its subcontract. RPC sued GBC and DPG's sureties under the Miller Act. DPG filed its complaint in intervention alleging that GBC had breached its agreement with DPG and seeking damages from GBC for any amounts that DPG is required to reimburse the sureties plus DPG's defense costs in the action.

Subsequent to the time the motion was briefed and prior to oral argument, the main action by RPC against GBC and DPG's sureties was settled and DPG paid RPC. At oral argument counsel for GBC conceded that GBC had an obligation to indemnify DPG but disputed the extent of the indemnification obligation. In addition, both parties indicated that they had additional claims against the other that had not yet been asserted.

The issue presented to the court is whether DPG can be compelled under the Federal Arbitration Act ("FAA") to arbitrate its claim against GBC as provided in the contract between the parties. DPG has raised three issues: (1) the FAA is inapplicable; (2) DPG may maintain this action as the subrogee of the sureties; and (3) GBC has waived its right to demand arbitration.


EXHIBIT 1
Page 2 of 12

## III. STANDARD APPLIED

In its opposition to the motion, DPG has appended and refers to several matters outside the pleadings. GBC has not objected to these extraneous materials and the court will consider them. In addition, at oral argument, both parties brought up matters outside the pleadings with respect to the nature and extent of the controversy between them as well as facts germane to the settlement of the main action and its impact on the motion at bar. In so doing the parties have implicitly, if not explicitly, consented to the court accepting and considering those extraneous materials. When matters outside the pleadings are presented to and considered by the court, the motion is treated as one for summary judgment.[1]

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment in its favor as a matter of law.[2] GBC does not dispute any of the factual matters presented by DPG in the materials extraneous to the pleadings. Nor were any objections or disagreements voiced as to facts material to the determination of the motion at bar presented at oral argument. Therefore, the sole question before the court is whether GBC is entitled to judgment in its favor as a matter of law.[3] GBC is entitled to judgment as matter of law only if no divergent ultimate inferences may reasonably be drawn from the undisputed facts.[4]

---

[1] Fed. R. Civ. P. 12(c).

[2] Fed. R. Civ. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

[3] *Pacific Legal Foundation v. State Energy Resources Conservation & Development Commission*, 659 F.2d 903, 911 (9th Cir. 1981).

[4] *Sankovich v. Life Insurance Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

ORDER FROM CHAMBERS [RE: DOCKET 74]
*Rebar Replacement Co. v. GBC, LLC et al*
Case No. A03-073 CV(JWS)                          3

EXHIBIT 1
Page 3 of 12

## IV. DISCUSSION

### A. Applicability of Federal Arbitration Act

Section 35 of the subcontract between DPG and GBC provides, in relevant part:[5]

> Should a controversy arise between the Contractor and the Subcontractor regarding any matter in this Subcontract, which the parties hereto cannot promptly adjust and determine, or which the Owner can not decide to the mutual satisfaction of both parties hereto, and which is not subject to or contingent upon the dispute resolution procedures under the Prime Contract, then such dispute shall be submitted to binding arbitration under the administration, and in accordance with the rules of Dispute Prevention and Resolution, Inc. provided that: * * *. Demand for arbitration shall be filed with Dispute Prevention and Resolution, Inc., and served on the other party.

DPG argues that the FAA does not apply because it is not shown that the contact in question is in interstate commerce.[6] The Supreme Court has made clear that for the purposes of the FAA, the word "involving" is broad and is the functional equivalent of "affecting commerce" which normally signals Congress' intent to exercise its commerce power to the full; a broad interpretation of this language is consistent with the Act's basic purpose. "Evidencing a transaction" means that the "transaction" must turn out, in fact, to have involved interstate commerce, even if the parties did not contemplate an interstate commerce connection.[7] The record in this case clearly demonstrates that the contract "[evidences] a transaction involving commerce" within

---

[5] The omitted materials deal with the arbitration process itself and are not germane to the determination of the instant motion or, to the extent germane, will be addressed in the appropriate point in the decision.

[6] 9 U.S.C. §2 provides in relevant part:
A written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

[7] See Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 273-75 (1995).

the scope of the FAA. First, the complaint in intervention itself shows that one member of the plaintiff joint venture is a foreign entity establishing an interstate nexus. Second, the subcontract involves a portion of a major construction project (hospital) under a prime contract with the Army Corps of Engineers. The argument that this contract does not affect commerce is untenable.

The FAA reflects a federal policy in favor of arbitration; doubts concerning the scope of arbitration are resolved in favor of arbitration.[8] A district court must order arbitration so long as the existence of the agreement to arbitrate is not disputed and the issue is within the scope of the arbitration clause.[9] DPG does not contest either the making of the agreement containing the arbitration clause or that the alleged breach by GBC of the contractually imposed obligation to defend and indemnify DPG and its sureties is a matter within the agreement. This controversy falls within the scope of the FAA.

### B. DPG as Subrogee

DPG maintains that it is not bringing this claim in its own right but as the subrogee of its sureties, Continental Casualty Company, National Fire Insurance Company of Hartford, Seaboard Surety Company, and St. Paul Fire and Marine Insurance Company. DPG asserts that the sureties, not being privy to the contract between DPG and GBC, are not bound by the arbitration provision and that the sureties could bring an action in their own names as third-party beneficiaries under the contract. According to DPG, because it stands in the shoes of the sureties, it is not bound to arbitrate.[10]

The court has difficulty under the facts in the case at bar in accepting the argument that DPG is not bringing this action in its own right. The government con-

---

[8] *Moses H. Cone Memorial Hosp. v. Mercury Construction. Corp.*, 460 U.S. 1, 24–25 (1983).

[9] *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999); *see also* 9 U.S.C. § 4.

[10] DPG, as with the rest of its argument on this point, does not cite any authority for its position.

ORDER FROM CHAMBERS [RE: DOCKET 74]
*Rebar Replacement Co. v. GBC, LLC et al*
Case No. A03-073 CV(JWS)                5

EXHIB       1
Page  5  of  12

tracted with DPG, who in turn subcontracted with GBC, who in turn further subcontracted with RPC. The government paid DPG for the work done, who in turn allegedly paid GBC in full,[11] but GBC did not pay RPC in full. RPC brought suit against GBC and the sureties (under the Miller Act the sureties stood in the shoes of the owner), the main action underlying the complaint in intervention at issue in the motion at bar, to collect the remaining balance it alleged was due. The RPC–GBC controversy has been settled and RPC paid. At oral argument counsel for DPG represented to the court that the RPC had been paid directly by DPG, not by the sureties who were then reimbursed by RPG. It is this payment that forms the majority of the basis for the indemnification claim against GBC.[12] Although DPG was not a party to the RPC action, it was DPG who paid the RPC claim and it is DPG, not the sureties, who is the real party in interest and sole party who will benefit from the indemnification agreement. In short, it is DPG's right to indemnification that is being asserted in this case, not some right that DPG acquired from the sureties. DPG has, in effect, allegedly overpaid GBC under the contract and is entitled to recover that overpayment; no matter what its form, that is the substance of the transaction. DPG need not rely on any rights it might have as subrogee of the sureties—DPG may sue in its own right.

Even if the court were to accept, *arguendo*, DPG's position that it is suing as the subrogee of the sureties, not on its own behalf, that does not necessarily produce the result sought by DPG. The arbitration clause is all-inclusive: it encompasses any controversy between the parties regarding any matter in the subcontract. Other than the relation to the subcontract requirement, the arbitration clause contains no restriction or condition, explicit or implicit, on submission to arbitration. It is undisputed that the right to indemnification is a matter contained in the subcontract. This is clearly a

---

[11] The court understands that there is some disagreement on this issue and expresses no opinion on the subject.

[12] The court also recognizes that there are certain other claims and counterclaims to which the parties have alluded. The court does not intend by anything contained in this decision as expressing, one way or another, an opinion as to the validity of those claims. This decision is solely directed to the issue whether those claims are subject to arbitration.

ORDER FROM CHAMBERS [RE: DOCKET 74]
*Rebar Replacement Co. v. GBC, LLC et al*
Case No. A03-073 CV(JWS)                6

EXH 1
Page 6 12

controversy between the parties to the subcontract (DPG and GBC) regarding a matter in the subcontract (indemnification); the "source of the claim" being asserted by DPG, whether direct or indirect (as assignee or subrogee), is irrelevant. The current controversy fits squarely within the four-corners of the arbitration provision. The admitted fact that the sureties are third-party beneficiaries further undercuts DPG's argument. The Ninth Circuit has held that third party beneficiaries may enforce arbitration agreements.[13] Other circuits have held that a non-signatory third-party beneficiary may also be compelled to arbitrate.[14]

As between DPG and GBC, the parties to the contract, the dispute underlying the complaint in intervention is subject to arbitration.

C. Waiver

Citing *International Brotherhood of Teamsters, Local 959 v. King*,[15] DPG asserts that GBC has waived arbitration because GBC (1) delayed in demanding arbitration, (2) failed to plead arbitration as an affirmative defense, and (3) availed itself of the court's discovery procedures Initially the court notes that the issue of waiver under the FAA is controlled by federal, not state, law.[16] Waiver of arbitration under the FAA is the subject of a well-developed body of controlling authority in this circuit.

Analysis starts with the proposition that the court will not find lightly waiver of the right to arbitrate.[17]

> In the Ninth Circuit, arbitration rights are subject to constructive waiver if three conditions are met: (1) the waiving party must have knowledge of an existing right to compel arbitration; (2) there must

---

[13] *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187–88 (9th Cir. 1986).

[14] *See, e.g., International Paper Co. v. Schwabedissen Maschinen & Anlgen, GMBH*, 206 F.3d 411, 416–18 (4th Cir. 2000); *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2nd Cir. 1995); *Gibson v. Wal-Mart Stores, Inc.*, 181 F.3d 1163. 1170 n. 3 (10th Cir. 1999); cf. *E.I. DuPont de Nemours & Co. v. Rhone Poulene Fiber & Resins Intermediaries, S.A.S.*, 269 F.3d 187, 195 (3rd Cir. 2001) (*dicta*).

[15] 572 P.2d 1168, 1173 (Alaska 1977).

[16] *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002)

[17] *Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 724 (9th Cir. 2000).

        be acts by that party inconsistent with such an existing right; and
(3) there must be prejudice resulting from the waiving party's
inconsistent acts.[18]

The party arguing waiver of arbitration bears a heavy burden of proof.[19] That the first condition is met is a given; that the second exists is questionable; and that the third is nonexistent is clear.

      Turning to the acts that DPG asserts are inconsistent with the right to arbitrate.

1. <u>Delay</u>. The complaint in intervention was filed January 8, 2004, the answer on January 15, 2004, and the instant motion on April 15, 2004, three months later. This is hardly excessive delay.[20]

2. <u>Failure to Plead Arbitration as an Affirmative Defense</u>. Although a factor to be considered, arbitration need not be pled as an affirmative defense. Fed. R. Civ. P. 8(c) is limited to situations where an arbitration has been held and the arbitrator ruled.[21]

3. <u>Participation in the Proceedings</u>. The inconsistent behavior alleged here is essentially the answer to the complaint and initiating discovery beyond that necessary to establish the right to arbitrate. That hardly rises to level that the Ninth Circuit has found sufficient to constitute a waiver.[22] "Moreover, inconsistent behavior alone is not

---

    [18] *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002)

    [19] *Britton v. Co-Op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990).

    [20] *Compare Britton v. Co-Op Banking Group*, supra, 916 F.2d at 1423 (a delay of 18 months after the complaint is filed and six months after the first demand for arbitration was made by letter, not excessive); *Sheetmetal Worker's International Ass'n, Local v. Jason Manufacturing, Inc.*, 900 F.2d 1392, 1399 (9th Cir. 1990) (five-month delay not untimely); *Van Ness Townhouses v. Mar Industries, Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (delay of more than two years sufficient to constitute waiver).

    [21] *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105–06 (9th Cir. 2002).

    [22] *Compare Hoffman Construction Co. of Oregon v. Active Erectors and Installers, Inc.*, 969 F.2d 796, 798–99 (9th Cir. 1992) (litigating to conclusion in the state courts); *Van Ness Townhouses v. Mar Industries, Corp.*, supra (extensive litigation over a period of two years).

ORDER FROM CHAMBERS [RE: DOCKET 74]
*Rebar Replacement Co. v. GBC, LLC et al*
Case No. A03-073 CV(JWS)        8

sufficient; the party opposing the motion to compel arbitration must have suffered prejudice."[23]

It is the third prong of the test, lack of prejudice, that is fatal to RPG's position. It claims to have expended time and incurred expenses in the action that would be unnecessary if GBC had demanded arbitration earlier.[24] The difficulty the court has in this respect is that, for the most part, to the extent DPG claims prejudice, it was self-inflicted. The contractual provision creating the obligation to arbitrate disputes is contained in a document that on its face indicates was prepared by DPG. Thus, DPG presumably had knowledge of the arbitration provision. Yet, despite its presumptive knowledge, DPG inexplicably disregarded this provision in initiating this action and filing the motion for summary judgment. The other item, the discovery initiated by GBC, has facial appeal but upon closer scrutiny also fails. What DPG fails to address is that while the materials GBC sought may not be germane to the issue of arbitration, they appear to go to matters that were at issue in the principal action. As such, much of the discovery would have been obtainable by GBC or the other parties to the principal action so that it was not necessarily an unnecessary or wasted expense. Since it was DPG, not GBC, that initiated this action instead of arbitration, DPG will not now be heard to complain about the costs incurred in connection with discovery conducted in the action.[25]

DPG complains that in its pre-litigation dealings with GBC, GBC did not any time demand or initiate arbitration. It also points to the fact that GBC in the motion before the court does not seek to compel arbitration nor has it filed a demand as required by the terms of the arbitration provision in the contract. In the opinion of the court this is insignificant and of little, if any, consequence. It does not appear that GBC has

---

[23] *ATSA of California, Inc. v. Continental Insurance Co.*, 702 F.2d 172, 175 (9th Cir. 1983).

[24] RPG has failed to provide any information let alone evidence as to amount of time expended or expenses incurred.

[25] Cf. *Britton v. Co-Op Banking Group, supra*, 916 F.2d at 1413.

ORDER FROM CHAMBERS [RE: DOCKET 74]
*Rebar Replacement Co. v. GBC, LLC et al*
Case No. A03-073 CV(JWS)                 9

Ex ___ 1
Page 9 of 12

asserted a claim against DPG.[26] It defies common sense to assume that a person against whom a claim is asserted and who is not seeking any form of relief would initiate an arbitration process any more than potential defendants initiate lawsuits against potential plaintiffs. There being no reason for, or obligation on the part of, GBC to launch a "pre-emptive strike" by initiating arbitration on a claim asserted by DPG against it, the court cannot find that it has waived its right to require arbitration of the controversy between it and DPG.[27]

At oral argument counsel for DPG acknowledged that the as yet unasserted claims of both parties would be subject to arbitration. It is difficult to understand how it would be prejudicial to compel DPG to arbitrate the indemnification claim connected with the action brought by RPC together with other claims brought by or against GBC, which claims arise out of the same contract.

## CONCLUSION

1. The contract between DPG and GBC provides for arbitration and comes within the scope of the Federal Arbitration Act.
2. As between DPG and GBC, the parties to the contract, the dispute underlying the complaint in intervention is subject to arbitration.
3. GBC has not waived the right to arbitration.

GBC seeks dismissal of the complaint. The FAA provides for a stay of the litigation pending arbitration,[28] but does not specifically provide for dismissal. Dismissal

---

[26] At oral argument, counsel for GBC alluded to claims GBC intended to assert against DPG. These claims appeared to be in the form of defensive claims primarily aimed at reducing DPG's indemnification claim.

[27] Cf. *Martin Marietta Aluminum, Inc. v. General Electric Co.*, 586 F.2d 143, 146–47 (9th Cir. 1978).

[28] 9 U.S.C. § 3 provides:
If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the



of an action without prejudice pending resolution through arbitration is sanctioned by the Ninth Circuit.[29] The court notes that staying the action as opposed to dismissal would do no more than provide a judicial forum for enforcement of the arbitration award. This court is exercising its supplemental jurisdiction over the complaint in intervention as part of its Miller Act jurisdiction over the related principal action. Since, as noted above, the principal action has been resolved, there is no longer a federal action pending to which this court's supplemental jurisdiction may be appended. As to the dispute between these parties, because both GBC and one member of the DPG joint venture are Alaska "citizens" compete diversity between the parties is lacking and the court would lack original jurisdiction over the claim asserted in the complaint in intervention if it were standing alone.[30]

Although either party may do so if desired, the court is not inclined to order arbitration at this point. It is best left to the parties to determine at what point further negotiations or discussions between them are pointless and that resort to arbitration is necessary. In any event, if DPG desires to continue with this litigation, it must first resort to arbitration, not the courts. If necessary, either party may return to the appropriate court of competent jurisdiction to enforce any arbitration order; however, whether that will be necessary is a matter of conjecture.

The ruling on this motion disposes of all the issues between Dick Pacific/Ghemm JV and GBC, LLC Contractors, and there is no just reason to delay entry of final judgment on the Complaint in Intervention.

**THEREFORE**, the Motion for Judgment on the Pleadings at docket 74 filed by GBC, LLC Contractors is **GRANTED**.

---

agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

[29] See *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, — F.3d —, 2004 WL 1088296, Slip Op. 5 (May 17, 2004); *Chappel v. Laboratory Corp. of America, supra,* 232 F.3d at 723–25.

[30] See *Carden v. Arkoma Associates,* 494 U.S. 185, 192-195 (1990).

The Complaint in Intervention is hereby **DISMISSED** without prejudice. The clerk may now close this file.

DATED at Anchorage, Alaska, this 2nd day of July 2004.

　　　　　　　　　　　　　　　　　　　　／s／ John W. Sedwick
　　　　　　　　　　　　　　　　　　　　JOHN W. SEDWICK
　　　　　　　　　　　　　　　　　　　　United States District Judge

JWS 7/2/04
A03-073--CV (JWS)　　　　　C. WILLIAMS

R. ROYCE III (ROYCE)
D. DAVISON
B. FALCONER (HICKS)

ORDER FROM CHAMBERS [RE: DOCKET 74]
*Rebar Replacement Co. v. GBC, LLC et al*
Case No. A03-073 CV(JWS)　　　　　12